(C.D. 2205)

Pastene & Co.
H. B. Thomas & Co. } *v.* United States

United States Customs Court, First Division

(Decided October 4, 1960)

*Lawrence & Tuttle* (*George R. Tuttle, Jr.*, and *Edward N. Glad* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The plaintiffs in this case imported certain footwear, described on the invoices as "BEACH WALK MODEL 3A—LEATHER (Sandal with Rubber Soles)," on which duty was assessed at the rate of 20 per centum ad valorem under the provision in paragraph 1530 (e), Tariff Act of 1930, as modified by T.D. 51802 and T.D. 51898, for footwear, made wholly or in chief value of leather, not specially provided for, other than certain named or described footwear.

The protest claim relied upon is for duty at the rate of 10 per centum ad valorem under the provision in the same paragraph, as modified by T.D. 51802, for "Slippers for housewear."

Exhibits illustrative of the items described on the invoices as above noted were offered and received in evidence without objection as plaintiffs' collective illustrative exhibit 1, and it was stipulated that the said items are in chief value of leather.

The illustrative exhibits, which are the same in construction and differ only in color, may be described as follows: Each consists of a rubber sole to the upper side of which is cemented a leather insole. The rubber sole is fashioned in such a way that, although the bottom part of the rubber sole is flat, the heel of the wearer is slightly elevated. At the place where the wearer's great toe is separated from the second toe, a double strip of leather is fastened to the sole in such

a manner that the wearer may slip it between the great and second toes. The double strip is divided into two separate strips which are fastened to the inner and outer parts of the sole at a point just before the place where the heel of the wearer rests. The leather strips, or thongs, as they are called, are decorated with strips of gold-colored leather.

It is the plaintiffs' contention that the imported articles respond to the common meaning of the term "slippers," and that because of the comparatively nondurable character of the materials used and the manner of the construction of the articles they are peculiarly suitable for housewear, rather than for general wear out-of-doors. On the other hand, defendant contends that articles such as those at bar are sturdy and durable enough for outdoor wear and are so worn, and that they are sandals and not slippers.

The term "slippers for housewear" first appeared as a separate tariff enumeration in the modification of paragraph 1530(e), *supra*, effected by the Presidential proclamation relating to the Mexican Trade Agreement, T.D. 50797. No material which could be considered indicative of the intent of the contracting parties to that agreement or to the general agreement (T.D. 51802, *supra*) as to the meaning of the term has been cited to us, nor has any been uncovered by our own research.

Webster's New International Dictionary, second edition, 1945, defines "slipper" as—

A kind of light shoe, often and typically one which may be slipped on with ease and worn in undress, but often an elaborate one worn with evening dress.

Funk & Wagnalls New Standard Dictionary, 1942, defines it as—

A low light shoe, chiefly for indoor wear, into or out of which the foot is easily slipped.

While the term "housewear" does not seem to be specifically defined in any of the dictionaries to which the court has access, it would seem to present no difficulties. Presumably, the term "slippers for housewear" means a light type of shoe, into which the foot may be easily slipped, worn chiefly indoors or in, about, or near the house, as opposed to those worn for outdoor wear, away from the house.

The article at bar is definitely a light shoe, considering "shoe" to be a generic term for footwear other than boots, as the dictionaries indicate it is. It is low in profile and is obviously one which may be slipped on with ease. In these respects, it meets the definition of the term "slipper."

It may also be a sandal, as defendant contends, for the term "sandal" seems to embrace shoes consisting of a sole only, held to the foot by thongs, etc., which aptly describes the merchandise at bar. See the

definitions of the terms "shoe" and "sandal" in the dictionaries, hereinbefore referred to.

Consequently, the fact that the article at bar may be a sandal is not a bar to its being a slipper. The crux of the matter seems to lie in the issue as to whether it is a slipper "for housewear."

From the evidence offered by both plaintiffs and defendant, it appears that the design and construction of the slippers at bar are fairly common and are used in the manufacture of slippers chiefly used indoors and slippers chiefly used outdoors. Thus, plaintiffs offered and there were received in evidence without objection as plaintiffs' collective exhibit 3 certain articles of similar construction and design, but made entirely of rubber materials, which, it appears, are worn chiefly on the beach and other outdoor places, and defendant offered, and there was received in evidence without objection as defendant's illustrative exhibit B, a pair of slippers of similar design and construction, but made of leather and synthetic materials, which, it appears, were worn chiefly in the boudoir or indoors.

Consequently, we think it may be said that the design and construction of slippers such as those at bar are not necessarily indicative of whether they are slippers for housewear or slippers for outdoor use. Moreover, we think it is apparent from the evidence offered by the parties, including the exhibits, that there is not necessarily any specific line of demarcation which separates certain slippers into the category of those for housewear and those for outdoor wear.

Some slippers, it is true, show by their appearance their obvious use. Thus, defendant's illustrative exhibit B is obviously a slipper for housewear—it is of light and fancy materials and plainly not fit for use in other than the interior of a house, protected from the uneven ground and dust, dirt, and elements which are common outside a house. Plaintiffs' collective exhibit 3, on the other hand, is made of heavier and sturdier materials, not readily injured by the conditions usually met out-of-doors.

However, it does appear from the record that some slippers fall into an in-between category, that is to say, slippers which are not chiefly used either indoors or out, but are generally used as casual footwear in both places, and we think the slippers at bar fall into that category.

Plaintiffs contend that the evidence they offered shows that the materials of which the slippers at bar are made are not suitable for outdoor wear by reason of the softness of the rubber material, the fanciness of the ornamentation, and the lack of resistance to water and the elements of the cement which joins the leather insole to the rubber outsole.

We are of the opinion, however, that the evidence offered by the defendant, particularly with reference to defendant's exhibits D and

E, which are domestically made slippers of materials virtually identical with those of the imported slippers in issue, establishes that such slippers are of the casual footwear type, suitable for both indoor and outdoor wear. Of course, it is understood that such slippers are not suitable for every outdoor use, but one chooses one's footgear largely in accordance with the type of walking that is intended, and we think it sufficiently appears that slippers such as those at bar are suitable for that wear in or away from the house that is known as "casual."

When the parties to the general agreement limited the type of slippers upon which modification of duties would be given to those "for housewear," we think they had in mind those chiefly used indoors. As we have found that the slippers at bar do not fall into that category, all of the protest claims must be overruled, and judgment will issue accordingly.